## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN THORPE,

     Plaintiff,

       v.

BOROUGH OF JIM THORPE, et al.,

     Defendants.

CIVIL ACTION NO. 3:10-CV-1317

(JUDGE CAPUTO)

## MEMORANDUM

After famous Native American athlete Jim Thorpe died in 1953, a chain of events led to his eventual burial and the establishment of a public shrine in what became the Borough of Jim Thorpe, Pennsylvania.  Dissatisfied with this arrangement, his son brought this action against the borough and its officers under the Native American Graves Protection and Repatriation Act, seeking to have his father's remains returned to him. The defendants have moved to dismiss the complaint. (Doc. 14.)  For the reasons stated below, the motion will be granted in part.

### I. BACKGROUND

At issue in this case are the remains of Jim Thorpe, considered by many to be America's all-time greatest athlete.  Following Jim Thorpe's death in 1953, the Pennsylvania boroughs of Mauch Chunk and East Mauch Chunk consolidated under the name "Jim Thorpe," established a public shrine, and buried Jim Thorpe's body on borough property.

More than fifty years passed.  On June 24, 2010, Jim Thorpe's son, John Thorpe, filed a complaint against the borough and its council members, seeking to have his father's

remains returned to him under the Native American Graves Protection and Repatriation Act (NAGPRA).  He seeks an order enjoining the defendants to repatriate Jim Thorpe's remains to him; a declaratory judgment that the borough is a museum within the meaning of the NAGRPA, that it is violating the NAGPRA's dictates, and that he has a right of possession to his father's remains; and damages, costs, and attorney's fees. He seeks to recover compensation under 42 U.S.C. § 1983 for the violation of his federal rights under the NAGPRA.

The defendants move to dismiss the complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. They argue that Mr. Thorpe lacks standing, or alternatively, has failed to exhaust his administrative remedies.  They further argue that Section 1983 does not apply to an action brought under the NAGPRA, and that Mr. Thorpe fails to state a claim upon which relief can be granted under the NAGPRA.  They raise the affirmative defense of qualified immunity.

Finally, the defendants move to dismiss under Rule 12(b)(7) for failure to join a party under Rule 19.

For the reasons explained below, the motion will be granted in part.  Mr. Thorpe will be directed to join the absent parties or establish that their joinder is (1) not feasible and (2) that the action may proceed under Rule 19(b).

## II. DISCUSSION

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed, in whole or in part, for failure to state a claim upon which relief can be granted.  Dismissal is

appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When deciding a Rule 12(b)(6) motion, a court does not consider whether a plaintiff will ultimately prevail; rather, the issue is "whether the plaintiff is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Sherer*, 468 U.S. 183 (1984). A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

## B. Overview of NAGPRA

Congress passed the Native American Grave Protection and Repatriation Act (NAGPRA), codified at 25 U.S.C. §§ 3001–3013, in 1990 "to strengthen federal protection of Native American burial sites and to enable tribes to pursue the recovery of sensitive materials in museum collections." Martin Sullivan, *A Museum Perspective on Repatriation: Issues & Opportunities*, 24 Ariz. St. L.J. 283, 283 (1992) (citing 25 U.S.C. §§ 3001–3013).

The NAGPRA protects Native American "cultural items," which include human remains, funerary objects, sacred objects, and objects of cultural patrimony. 25 U.S.C. § 3001(3)(A)-(D). The NAGPRA gives Native Americans an interest of ownership or control in Native American cultural items in two circumstances. *See* H.R. Rep. No. 101-877, at 8–9 (1990). First, it gives a right to repatriation of Native American cultural items—including human remains—that are excavated or discovered on federal or tribal lands. *Id.* Second, the act gives a right of repatriation when these items are possessed or controlled by museums or federal agencies. *Id.*

3

In line with these two objectives, the NAGPRA provisions can be divided into two groups: the "discovery" provision, and the "museum" provisions. The discovery provision relates to Native American human remains, funerary objects, sacred objects and objects of cultural patrimony that are excavated or discovered on Federal or tribal lands after November 16, 1990. *See* 25 U.S.C. § 3002. The discovery portion of the act is not at issue in this case.

At issue are the museum provisions, which address Native American cultural items—including human remains—possessed or controlled by a museum or federal agency. *See* 25 U.S.C. § 3002–3008. Under the NAGPRA, a "museum" includes "any institution or State or local government agency . . . that receives Federal funds and has possession of, or control over, Native American cultural items," and does not include the Smithsonian Institution or any federal agency. 25 U.S.C. § 3001.

Museums and federal agencies which have possession or control over Native American human remains must compile an inventory and endeavor to identify the cultural and geographical affiliation of the remains and notify the affected tribe. *Id.* at § 3003. Once the cultural affiliation of Native American human remains is established, a lineal descendant of the Native American or the tribe may request the return of the remains. *Id.* at § 3005(a).

Congress delegated authority to the Secretary of the Interior to establish a committee to oversee the implementation of the inventory process. *Id.* at § 3006. Following a hearing, the Secretary may assess a civil penalty against any museum that fails to comply with the NAGPRA's requirements. *Id.* at § 3007. The Secretary is also responsible for promulgating regulations to facilitate the NAGPRA's implementation. *Id.* at 3011. These regulations are

4

codified at 43 C.F.R. §§ 10.1–10.17.

When disputes under the NAGPRA arise, "[t]he United States district courts shall have jurisdiction over any action brought by any person alleging a violation of this chapter and shall have the authority to issue such orders as may be necessary to enforce the provisions of this chapter." *Id.* at § 3013.

## C. Mr. Thorpe Has Standing to Proceed

The defendants argue that Mr. Thorpe lacks standing.  A proper plaintiff must have standing under Article III of the Constitution and meet prudential standing principles. While constitutional standing concerns whether a dispute is a "case" or "controversy," prudential standing principles delimit federal courts to hearing cases within the bounds of prudential judicial administration.

The Constitution limits federal court jurisdiction to "Cases" and "Controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992) (citing Art. III, § 1).  The case-or-controversy requirement demands that a plaintiff establish the existence of:

> (1) [an] "injury in fact," [which is] an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," *Lujan*, 504 U.S. at 560; (2) a causal relationship between the injury and the challenged conduct, [meaning] that the injury "fairly can be traced to the challenged action of the defendant," and has not resulted "from the independent action of some third party not before the court," *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976); and (3) a likelihood that the injury will be redressed by a favorable decision, [meaning] "that the prosect of obtaining relief from the injury as a result of a favorable ruling" is not "too speculative," *Allen v. Wright*, 468 U.S. 737, 752 (1984).

*Ne. Fla. Contractors v. Jacksonville*, 508 U.S. 656, 663–64 (1993) (some citations omitted).

This "irreducible minimum" must be met in every case. *See id.* at 664 (quoting *Valley Forge*

*Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982)).

Here, Mr. Thorpe's injury meets this constitutional minimum.  His allegation that his father's remains have not been returned to him, despite his statutory right to make a claim, reflects an actual, concrete injury.  This injury is fairly traceable to the defendants' failure to comply with the inventory and notice provisions of the NAGPRA.  Finally, a decision in Mr. Thorpe's favor, ordering that his father's remains be returned, would redress his injury.  His claim presents a live "case" or "controversy" within the meaning of Article III.

In addition to the constitutional limits on standing, the Supreme Court has identified prudential principles that constrain jurisdiction in the interests of wise judicial administration. *See Bennett v. Spear*, 520 U.S. 154, 162 (1997) (citing *Valley Forge*, 454 U.S. at 474–75). One of these principles is that a party's claim must fall within the zone of interests that the statute protects. *Id.* (citing *Allen*, 468 U.S. at 751). Although "the  zone of interests 'test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit,' '[t]he test is not meant to be especially demanding.'" *Freeman v. Corzine*, __ F.3d __, Nos. 08-3268, 08-3302, 2010 WL 5129219, at *4 (3d Cir. Dec. 17, 2010) (citing *Davis v. Phila. Hous. Auth.*, 121 F.3d 92, 98 (1997)).

The defendants claim that Mr. Thorpe's interest in his father's remains does not fall within the zone of interests that the NAGPRA seeks to protect. They cite language from *Romero v. Becken*, a Fifth Circuit decision which noted in dicta that the NAGPRA seeks to protect "Native American artifacts, cultural items, and other such objects 'having ongoing

6

historical, traditional, or cultural importance central to the Native American group or culture itself, rather than property owned by an individual Native American.'" 256 F.3d 349, 354–55 (5th Cir. 2001) (quoting 25 U.S.C. § 3001(3)(D)).   The defendants argue that *Romero* forecloses Mr. Thorpe's claim because he has failed to show that his father's remains are important to Native American culture itself.

The defendants' argument fails because they take *Romero's* language out of context and misapply it.   *Romero* was discussing an "object of cultural patrimony," which the NAGPRA defines as an object that is important to Native American culture as a whole.  *See* 25 U.S.C. § 3001(3)(D)*.*  But this definition does not apply to any of the other categories of cultural item—including human remains.  The definition of "human remains" appearing in the implementing regulations,[1] "the physical remains of the body of a person of Native American ancestry," is devoid of any indication that the remains must have cultural significance.  43 C.F.R. § 10.2(d)(1).

Because there is no requirement that human remains have importance to Native American culture itself, Mr. Thorpe's claim does not fall outside the zone of interests that the NAGPRA protects.

## D. The Claim Is Ripe

The defendants argue that Mr. Thorpe's failure to exhaust his administrative remedies under the NAGPRA precludes judicial review of his claims. The NAGPRA and its regulations address two different administrative arenas that a claimant might encounter. First, the

---

[1] The defendants do not argue that the regulation's definition of human remains is in tension with Congress's intent. As discussed in Section F.1, below, Congress intended the term to apply to all human remains of Native American ancestry.

NAGPRA is administered by the Secretary of the Interior, who has established procedures for claimants to follow in seeking civil penalties against museums. *See* 43 C.F.R. § 10.12. Second, the NAGPRA addresses the procedures claimants must follow when petitioning museums on federal lands for repatriation. *See id.* at §§ 10.10(a), 10.15(c).

## 1. The NAGPRA's Internal Administrative Structure

Congress provided that the Secretary of the Interior would establish a committee of seven members to review and make findings related to the repatriation of cultural items "upon the request of any affected party." 25 U.S.C. § 3006(c)(3). Additionally, the committee is responsible for "facilitating the resolution among . . . lineal descendants and Federal agencies or museums relating to the return of such items including convening the parties to the dispute if deemed desirable." *Id.* at § 3006(c)(4). The records and findings the review committee makes relating to the repatriation of human remains may be admissible in an action brought under the NAGPRA. *Id.* at § 3006(d). The committee is an advisory committee governed by the Federal Advisory Committee Act (FACA), 5 U.S.C. App. 2 § 1 *et seq.* See *id.* at § 3 (defining "advisory committee" in part as any committee established by a statute in the interest of obtaining advice for a federal agency); 43 C.F.R. § 10.2(2). Under FACA, "advisory committees shall be utilized solely for advisory functions" unless a statute or Presidential directive explicitly provides otherwise. *Id.* at § 9. Thus, although the NAGPRA review committee may make recommendations, it is incapable of adjudicating disputes.

The NAGPRA provides that the Secretary of the Interior may assess a civil penalty against any museum that fails to comply with the act or its implementing regulations. Any person may bring an allegation of failure to comply to the attention of the Secretary. 43

C.F.R. § 10.12.  If the Secretary determines that the allegation does not show a failure to comply, written notification must be provided to the person making the allegation. *Id.* at § 10.12(d)(3).  If the Secretary finds that the allegation has merit, a notice of failure to comply is served on the museum and any lineal descendants or affiliated tribes. *Id.* at § 10.12(e). The museum may request a hearing or wait for a notice of assessment, after which it has an opportunity to request a hearing. *Id.* at § 10.12(f).  Any penalty amount is determined on the record and can be appealed to the Interior Board of Indian Appeals.  *Id.* at § 10.12(j)–(l). If affirmed, judicial review may be obtained in federal district court. *Id.*

### 2. Administrative Requirements When Petitioning Federal Agencies or "Museums"

The NAGPRA provides a right of repatriation to cultural items held by museums or federal agencies.  *See* 25 U.S.C. §§ 3003, 3005.  Thus, the NAGPRA anticipates that claimants will encounter various government agencies and museums, and its provisions provide those entities with autonomy and deference when addressing claims for repatriation. *See* 43 C.F.R. §10.15.  With respect to items discovered, excavated, controlled, or possessed on federal or tribal land, the regulations specify that "no person is considered to have exhausted his or her administrative remedies with respect to the repatriation or disposition of human remains . . . [discovered on federal lands] until such time as the person has filed a written claim for repatriation or disposition with the responsible museum or Federal agency and the claim has been duly denied following these regulations."  43 C.F.R. § 10.15(c).

### 3. Legal Standard for Exhaustion

"Where relief is available from an administrative agency, the plaintiff is ordinarily

required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." *Reiter v. Cooper*, 507 U.S. 258, 269 (1993) (citing *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51 (1938); *Heckler v. Ringer*, 466 U.S. 602, 617, 619 & n.12 (1984)).  Whenever Congress mandates exhaustion, it is required. *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (internal citations omitted).  "But where Congress has not clearly required exhaustion, sound judicial discretion governs." *Id.* (internal citations omitted).  That discretion must be exercised in accordance with "appropriate deference to Congress' power to prescribe the basic procedural scheme under which a claim may be heard in federal court." *Id.* "Exhaustion . . . serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *Id.* at 145.

In exercising their discretion in determining whether exhaustion is required, courts "balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *Id.* at 146.  Courts are counseled that "administrative remedies need not be pursued if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." *Id.* (citing *West v. Bergland*, 611 F.2d 710, 715 (8th Cir.1979)).

The interests of the individual "weigh heavily against requiring administrative exhaustion" when the administrative remedy is inadequate.  An administrative remedy is inadequate when the agency lacks the authority to grant the relief requested. *Id.* (citing *McNeese v. Board of Ed. for Cmty. Unit Sch. Dist. 187*, 373 U.S. 668, 675 (1963) (holding

10

that students seeking to integrate public school need not file complaint with school superintendent because the "Superintendent himself apparently has no power to order corrective action" except to request the Attorney General to bring suit)).

### 4. Mr. Thorpe is Not Required to Exhaust with the Secretary of the Interior

Here, Mr. Thorpe seeks money damages, a declaration of his rights, and an order enjoining the defendants to follow the procedures dictated by the NAGPRA and return his father's remains. This relief is unavailable to Mr. Thorpe at the administrative level. Neither the review committee, which can only make advisory recommendations, nor the Secretary, has the power to give declaratory, injunctive, or monetary relief to a lineal descendant. The only administrative recourse Mr. Thorpe has under the NAGPRA is the possibility that the Secretary may assess a civil penalty (the proceeds of which would not be Mr. Thorpe's) after he brings an allegation of noncompliance to the Secretary's attention. Because Congress did not establish an administrative procedure by which Mr. Thorpe can receive the relief he seeks, pursuing administrative remedies would prove futile for him.

### 5. Mr. Thorpe is Not Required to Exhaust with the Borough

The defendants appear to argue that Mr. Thorpe must exhaust his remedies in accordance with the regulation providing that claimants must file written claims for repatriation when the item is discovered or excavated on federal lands or is controlled by a museum on federal land. *See* 43 C.F.R. § 10.15. They cite to *Monet v. Hawaii*, an unpublished Ninth Circuit case, which held that a plaintiff seeking repatriation had not exhausted his remedies because the agency he petitioned had not rendered a final decision on his repatriation claim. *See Monet v. Hawaii*, No. 96-16417, 1997 WL 252306 (9th Cir. May

12, 1997).   The plaintiff's claims in *Monet* arose from the discovery of ancient Native Hawaiian human remains and funerary objects at a Marine Corps air station.   *Id.*   Fifteen individuals, including the plaintiff, had filed claims for repatriation of the remains and objects pursuant to the procedures specified in the regulations.   *See id.*   The Ninth Circuit held that because "[t]he Marine Corps ha[d] not yet finally determined which of the competing claimants [was] entitled to receive the remains and funerary objects," the plaintiff had not exhausted his remedies.

*Monet* is distinguishable from the present case.   The exhaustion provision at issue in *Monet* is only mandatory when cultural items are either discovered or excavated on federal or tribal land (as was the case in *Monet*), or held by a museum on federal land.   *See* 43 C.F.R. § 10.15(c).   Here, Jim Thorpe's remains are held on borough property, so the exhaustion provision in § 10.15(c) is not mandatory.   Thus, whether the plaintiff must first exhaust with the borough depends on whether his interest in accessing a judicial forum outweighs the institutional interests that favor exhaustion. *McCarthy*, 503 U.S. at 146.

Here, Mr. Thorpe's interests in judicial review outweigh the borough's administrative interests.   Under the NAGPRA, the submission of a request to a museum for repatriation presupposes that the inventory provisions have been complied with.   The requirement that an individual submit a written request allows a museum to develop a full factual record and apply its expertise in light of the inventory it has compiled.   No such inventory has been completed here; in fact, Mr. Thorpe alleges that the borough has disregarded all of the NAGPRA's requirements.   The borough is well aware that Mr. Thorpe seeks his father's remains, and it strongly opposes their return.   Requiring Mr. Thorpe to file a written request

with the borough would prove an empty formality. Additionally, as the review committee

noted in its 2009 annual report to Congress, resolution of a written request can take years:

> Nothing in the regulation requires a museum or federal agency to answer a request for repatriation. Thus, a museum or federal agency that . . . believes that it has the right of possession to the item being requested . . . is not obligated under existing law to inform the requesting [party] of that determination.  As a result, some requests for repatriation have taken several years to be resolved, which is a timetable that the Review Committee sees as unacceptable and a barrier to the implementation of NAGPRA.

2009 NAGPRA Rev. Comm. Ann. Rep. 9.  The interests of the individual in judicial review

are especially strong where there exists "an indefinite timeframe for administrative action."

 *McCarthy*, 503 U.S. at 147 (citing *Coit Indep. Joint Venture v. FSLIC*, 489 U.S. 587

("Because the Bank Board's regulations do not place a reasonable time limit on FSLIC's

consideration of claims, Coit cannot be required to exhaust those procedures.")).  Likewise,

the government's interests in administrative autonomy may be discounted where there is a

total failure to comply with federal law.  Here, Mr. Thorpe's interest in speedy adjudication

of his claim outweighs the borough's interest in efficiency and autonomy.

Because exhaustion is not statutorily mandated in this case, and because the

plaintiff's interests in judicial review outweigh the borough's institutional interests, exhaustion

will not be required.

## E. A Violation of NAGPRA Cannot Be Redressed Through Section 1983

The defendants argue that Mr. Thorpe cannot state a viable cause of action under 42

U.S.C. § 1983 for violations of his rights under NAGPRA.  Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an

action at law . . . .

Although the statutory language might seem to suggest that the deprivation of a right under *any* law might be a basis for an action under § 1983, it has never been interpreted that broadly. Until 1980, the Supreme Court had only upheld a cause of action under § 1983 where the violated statute was enacted pursuant to Congress's power to enforce the Fourteenth Amendment. Then, in *Maine v. Thiboutot*, 448 U.S. 1, 4, 8 (1980), the Court held that § 1983 "means what it says," and that the statutory phrase "and laws" permits a cause of action to proceed when a party is deprived of any right, privilege, or immunity secured by a federal law.

In subsequent cases, the Court cabined the potential reach of *Thibotout*. Not *all* statutory violations can be redressed through § 1983**.** Instead, § 1983 is available only when a statutory violation leads to a deprivation of a "right" secured by a federal law. *Blessing* v. *Freestone*, 520 U.S. 329, 340 (1997) ("In order to seek redress through § 1983, however, a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*.") (citing *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106 (1989)). Thus, only when statutes give rise to federal *rights* can their violations be redressed under § 1983. Even then, Congress can implicitly or explicitly foreclose the use of § 1983 with respect to a particular provision.

### 1. NAGPRA Gives Rise to a Federal Right

Courts consider three factors in determining whether a statute creates a federal right:

First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously

14

> impose a binding obligation on the States.  In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

*Blessing*, 520 U.S. at 340 (internal citations omitted).   Here, all three factors show that the repatriation provisions create a federal right.

Considering the first factor, it is clear that the NAGPRA was intended to benefit lineal descendants, like the plaintiff, whose ancestors' human remains are controlled or possessed by a museum. *See* 25 U.S.C. § 3002(a)(1) (providing that "[t]he ownership or control of . . . Native American human remains . . . [shall be] in the lineal descendants of the Native American.").  Lineal descendants have a right to request their ancestors' remains, and can avail themselves of a private right of action to enforce the repatriation provisions. *See* 25 U.S.C. § 3013 (creating a cause of action which can be "brought by any person alleging a violation of this Act").

The right to one's ancestor's remains is not so "vague or amorphous" that it precludes consistent enforcement.  The act and its regulations define who is a lineal descendant and provide guidance on resolving competing claims of multiple descendants or tribes.  *See* 43 C.F.R. §§ 10.2(b)(1); 10.10(c)(2).

Finally, the NAGPRA imposes a binding obligation on the States. A state agency with possession of, or control over, Native American human remains is affirmatively required to create an inventory and repatriate upon request.  The inventory and repatriation provisions are not aspirational; instead they are phrased in mandatory terms of positive obligation. *See* 25 U.S.C. §§ 3003(a), 3005(a)(1) ("each museum . . . *shall* compile an inventory;" "[the] museum, upon the request of a known lineal descendant . . . *shall* expeditiously return such

remains").

Although the NAGPRA's repatriation provisions give the plaintiff a federal right, he can only bring an action under § 1983 by establishing that Congress did not preclude its use.

## 2. In Enacting NAGPRA, Congress Foreclosed Enforcement Under § 1983

Even where "a federal statute creates an individual right, there is only a rebuttable presumption that the right is enforceable under § 1983." *Blessing*, 520 U.S. at 341. The presumption is rebutted if Congress precludes enforcement under § 1983. *Id.* (citing *Smith v. Robinson*, 468 U.S. 992, 1105 & n.9 (1984)). The paramount question is Congress's intent, and Congress may foreclose a remedy under § 1983 "expressly, by forbidding recourse to § 1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Id.* (citing *Livadas v. Bradshaw*, 512 U.S. 107, 133 (1994)).

Congress did not explicitly foreclose a remedy under § 1983 in the NAGPRA's provisions. Therefore, it is necessary to determine whether it impliedly did so by creating an enforcement scheme incompatible with enforcement under § 1983. Two cases decided shortly after *Thibotout* provide examples of implied foreclosure. In *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1 (1981), the Court held that in passing the Federal Water Pollution Control Act  and the Marine Protection, Research, and Sanctuaries Act of 1972, Congress intended to preclude any remedy under § 1983. *Id.* at 21. The Court referred to both acts' "unusually elaborate enforcement provisions," including provisions creating a cause of action that government officials, as well as private citizens, could pursue. *Id.* at 13. Similarly, in *Smith v. Robinson*, 468 U.S. 992, 1012 (1984),

16

the Court held that recourse under § 1983 was inconsistent with Congress's comprehensive administrative scheme under the Education of the Handicapped Act.

Mr. Thorpe broadly reads *Sea Clammers* and *Smith* to mean that only enactments with "unusually elaborate, carefully tailored, and restrictive enforcement schemes" preclude remedies under § 1983. (*See* Pltf's Br. in Opp; Doc. 19 at 15). Mr. Thorpe argues that the NAGPRA's enforcement scheme is not sufficiently "elaborate" to preclude remedies under § 1983.

However, case law does not support the proposition that a statute's given remedy must be particularly "elaborate" to foreclose resort to § 1983. In *Ranchos Palos Verdes v. Abrams*, 544 U.S. 113, 121 (2005), the Supreme Court explained that Congress's provision of an "express, private means of redress" in a statute ordinarily indicates an intent to foreclose "a more expansive remedy under § 1983." The Court noted that the violated statutes at issue in both *Sea Clammers* and *Smith* (the two cases holding § 1983 unavailable) provided more restrictive remedies than those available under § 1983. *Id.* at 121. By contrast, "in *all* of the cases in which [the Court has] held that § 1983 *is* available for violation of a federal statute, [it] ha[s] emphasized that the statute at issue, in contrast to those in *Sea Clammers* and *Smith*, *did not* provide a private judicial remedy . . . for the rights violated." *Id.* (emphasis in original). "Thus, the existence of a more restrictive private remedy for statutory violations has been the dividing line between those cases in which [the Court has] held that an action would lie under § 1983 and those in which we have held that it would not." *Id.*

In *Rachos Palos Verdes*, the Court applied this dividing line to the

Telecommunications Act of 1996 (TCA), holding that because it limited relief in ways inconsistent with § 1983, Congress's intent to foreclose recourse to § 1983 was clear. *Id.* (noting that the TCA created a private remedy which did not provide for attorney's fees and costs, and may not have included compensatory damages).

Similarly, the remedy under NAGPRA is narrower than that available under § 1983. Section 15 creates a means of redress:

> The United States district courts shall have jurisdiction over any action brought by any person alleging a violation of this Act and shall have the authority to issue such orders as may be necessary to enforce the provisions of this Act.

25 U.S.C. § 3013.   Such provision of a private remedy strongly indicates Congress's intent to supplant § 1983. *See Ranchos Palos Verdes*, 544 U.S. at 121.  As was true in *Ranchos Palos Verdes*, the remedies available under § 1983 are far more expansive than those available under the act in issue here.   Compensatory damages, attorney's fees, and reasonable costs are available in an action brought pursuant to § 1983.  *See* 42 U.S.C. § 1988 (providing attorney's fees and costs); *Memphis Community School District v. Stachura*, 477 U.S. 299 (1986); Carey *v. Piphus*, 435 U.S. 247 (1978).  Under the NAGPRA, however, a court merely has the authority to "issue such orders as may be *necessary* to enforce the provisions of this Act."  25 U.S.C. § 3013 (emphasis added).  Thus, while a court can issue orders necessary to enforce the NAGPRA, compensatory damages and attorney's fees are not available.  *See Castro Romero v. Becken*, 256 F.3d 349, 350 (5th Cir. 2001) ("The Act does not provide grounds for recovery of monetary damages . . . .").  By providing more limited remedies under the NAGPRA than those available under § 1983, Congress foreclosed § 1983 as an avenue for relief.

18

Because § 1983 is not available, Mr. Thorpe must proceed on his claim solely under the private remedy provided under the NAGPRA. To the extent he seeks money damages and attorney's fees, his claim will be dismissed.

**F.  Mr. Thorpe States a Claim Under NAGPRA**

The defendants argue that Mr. Thorpe fails to state a claim under the NAGPRA upon which relief can be granted for two reasons: first, because "human remains" do not include a modern-day Native American's remains, the borough cannot be a "museum" within the meaning of the statute; and second, the borough has the right to keep Jim Thorpe's remains.

**1. The Claim Falls Within The NAGPRA's Purview**

The defendants assert that because Jim Thorpe's remains are not "human remains" within the meaning of the NAGPRA, the borough cannot be a museum (because it does not have control or possession over "human remains").  Although the Act refers to "Native American human remains," it does not define the term. The implementing regulations, however, define "human remains" as follows:

> the physical remains of the body of a person of Native American ancestry. The term does not include remains or portions of remains that may reasonably be determined to have been freely given or naturally shed by the individual from whose body they were obtained, such as hair made into ropes or nets.

43 C.F.R. § 10.2(d)(1). Because the complaint alleges that Jim Thorpe was of Native American ancestry, specifically of Sac and Fox lineage, his remains fall within the ambit of the regulatory definition.

"Museum" is defined to include "any institution or State or local government agency (including any institution of higher learning) that receives Federal funds and has possession

of, or control over, Native American cultural items." 25 U.S.C. § 3001(8). The definition in the implementing regulations is identical. 43 C.F.R. § 10.2(a)(3). The complaint alleges that the borough is a local government agency receiving federal funds and has possession of, and control over, the human remains of Jim Thorpe. Because human remains are a subset of cultural items, *see* 25 U.S.C. § 3001(3), if Jim Thorpe's remains count as "human remains," the borough is a museum and can be held liable under the NAGPRA.

Because the definition of "human remains" is "within the scope of an agency's rulemaking and lawmaking authorty, [the court's] inquiry implicates the principles set forth in *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)." *Pareja v. Att'y Gen. of U.S.*, 615 F.3d 180, 192 (3d Cir. 2010) (citing *Lin-Zheng v. Att'y Gen. of the U.S.*, 557 F.3d 147, 155 (3d Cir. 2009) (en banc).

Under *Chevron*, courts defer to an agency's reasonable interpretation of a statute it is charged with administering. 467 U.S. at 842–43. *Chevron* deference involves a two-step inquiry. *See id.* First, a court asks "whether Congress has directly spoken to the precise question at issue." *Id.* at 842. If it has, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. If Congress has not clearly answered the question at issue, the court will uphold the agency's answer if it is "based on a permissible construction of the statute." *Id.* at 843.

Here, the precise question at issue is whether Congress, by requiring museums with possession of "Native American human remains" to compile an inventory in contemplation of possible repatriation, *see* 25 U.S.C. § 3003, could have intended to include museums possessing the remains of modern Native Americans.

20

"The language Congress chose when crafting a statute must be considered first and foremost, and if plain and unambiguous, it must be credited, except in 'rare and exceptional circumstances.'" *In re Visteon Corp.*, 612 F.3d 210, 226.  The defendants argue that here, rare and exceptional circumstances exist showing that Congress only intended the term "Native American human remains" to apply to ancient or historic remains.

Here, the statute's language is unambiguous.  The term "Native American human remains" plainly encompasses the remains of Jim Thorpe.  However, the defendants contend that the plain meaning should be ignored lest litigation lead to results that Congress did not anticipate.  They point to portions of the legislative history discussing Native-American items lost to grave robbing, which "peak[ed] during the last century and the early part of this century." H.R. Rep. No. 101-877, at 9 (1990), *reprinted in* 1990 U.S.C.C.A.N. 4367, 4369.  Because Congress took aim at a turn-of-the-century problem, defendants reason that it intended the statute to have no application to modern cultural items or conduct.

It is true that a law's primary objective may be to remedy an evil that occurred largely in the past.  However, this is not sufficient to foreclose its application to contemporary circumstances.  For example, no one could reasonably contend that civil rights statutes passed in the wake of the Civil War do not apply to modern situations simply because they were aimed at a historical evil.

At any rate, the defendant's citation to the legislative history fails.  A court "may only look to legislative history if [the] plain meaning produces 'a result that is not just unwise but is clearly absurd.'" *United States v. Terlingo*, 327 F.3d 216, 221 n.1 (3d Cir. 2003) (quoting *United States v. Maung*, 267 F.3d 1113, 1121 (11th Cir. 2001). The defendants merely raise concerns over an *unwise* result—not an absurd one working at cross-purposes with the act.

21

Congress's intent to encompass all Native American human remains is unambiguously expressed in the plain language of the statute.  *See Yankton Sioux Tribe v. U.S. Army Corps of Engineers*, 83 F. Supp. 2d 1047, 1056 (D.S.D. 2000) ("The Act must [ ] be interpreted to apply to all human remains within the meaning of 43 C.F.R. § 10.2(d)(1), and not merely human remains of prehistoric origin.") (emphasis added).  *But see Kickapoo Traditional Tribe of Texas v. Chacon*, 46 F. Supp. 2d 644, (W.D. Tex. 1999) ("NAGPRA was not meant to apply to a recently buried corpse which is of no particular cultural or anthropological interest, but which is sought by state authorities for the purposes of conducting an inquest.").  The defendants fail to explain how applying the NAGPRA to modern Native American remains produces a result so absurd that the unambiguous statutory language should be set aside.

Because Congress intended the term "Native American human remains" to have its ordinary meaning, the second *Chevron* question of whether the agency's interpretation (which, incidentally, arrived at the same conclusion) is reasonable need not be asked. Taking the allegations of the complaint as true, Jim Thorpe's remains are "human remains" covered by the NAGPRA.

Because Jim Thorpe's remains are covered, they fall within the greater category of "cultural items."  *See* 25 U.S.C. § 3001(3) (defining "cultural items" to include human remains).  Therefore, the complaint properly alleges that the borough is a museum, and therefore states a claim upon which relief can be granted.

## 2. Whether the Borough Has a Right of Possession Is Not Grounds for Dismissing the Complaint

The defendants further argue that the NAGPRA does not apply because Jim Thorpe "was laid to rest in the [borough] in accordance[ ] with his religious beliefs and tribal rites

pursuant to the wishes of his widow, who entered into a contract with the Borough to ensure her husband was properly memorialized." They attach as an exhibit what appears to be a copy of the contract.

On a motion to dismiss, a court may consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Under Federal Rule of Civil Procedure 12(d), if, on a motion to dismiss "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."

Here, the NAGPRA provides a defense to those museums having a "right of possession" in human remains.  A museum has a right of possession when "[t]he original acquisition of Native American human remains . . . were . . . obtained with full knowledge and consent of the next of kin . . . ." 25 U.S.C. § 3001(13).  Whether the defendants have a right of possession is a question of fact, is not necessary to the plaintiff's claims, and is not properly considered on a motion to dismiss.  The submitted exhibit is not considered for purposes of this motion.

## G. The Defense of Qualified Immunity Does Not Apply

The defendants raise the defense of qualified immunity.  Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable official would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity applies to

23

claims of monetary relief against officials, but not to claims for injunctive relief. *E.g., Meiners*

*v. Univ. of Kansas*, 359 F.3d 1222, 1233 n.3 (10th Cir. 2004) (citing *Frank v. Relin*, 1 F.3d

1317, 1327 (2d Cir. 1993). Because the plaintiff is foreclosed from seeking compensatory

relief under the NAGPRA and may only pursue equitable relief, the defense of qualified

immunity does not apply to his claims.[2]

## H. The Absentee Parties are "Necessary"

Finally, the defendants assert that the complaint must be dismissed under Rule

12(b)(7) for failing to join indispensable parties—namely, the Sac & Fox tribe and all lineal

descendants of Jim Thorpe.

Under Rule 19 of the Federal Rules of Civil Procedure, a "necessary" absentee must

be joined as a party, unless joinder is not feasible and the party is not "indispensable."[3]  An

analysis under Rule 19 is a two-step process.  *Gen Refractories Co. v. First State Ins. Co.*,

500 F.3d 306, 312 (3d Cir. 2007). First, the court determines whether the absent parties are

---

[2] The plaintiff has sued the borough officials in their individual capacities. However, equitable relief can only be obtained against these officials in their official, and not their individual, capacities. *Frank*, 1 F.3d at 1327; *Com. of Pa. v. Porter*, 659 F.2d 306, 337 n.10 (3d Cir. 1931) ("To the extent, of course, that the injunction orders official action, it is obviously directed at the members of the Borough Council in their official capacity."). "Official-capacity suits are an alternative way to plead actions against entities for which an officer is an agent." *Koslow v. Commonwealth of Pa*, 302 F.3d 161, 178 (3d Cir. 2002) (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)).

Courts construe pleadings "so as to do justice." Fed. R. Civ. P. 8(e).  *See Hindes v. FDIC*, 137 F.3d 148, 157 (3d Cir. 1998) (construing claim identified in the complaint as against an official in his individual capacity as asserting a claim against him in his official capacity); *Biggs v. Meadows*, 66 F.3d 56, 60–61 (4th Cir. 1995) (holding that a plaintiff need not expressly plead the capacity in which he is suing a defendant under § 1983, but the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity).  Thus, to the extent the complaint seeks equitable relief against the borough council members, it will be construed as asserting a claim against them in their official capacities.

[3] Although the current version of Rule 19 does not use the terms "necessary" and "indispensable," they are vestiges of prior versions of the rule which have survived in case law "at the price of some confusion." *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404 n.4 (3d Cir. 1993).

"necessary" under Rule 19(a). *Id.* Even a "necessary" party need not always be joined in order for the case to proceed. *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 862 (2008) ("[N]onjoinder even of a required person does not always result in dismissal."). Instead, Rule 19(a) "defines the persons whose joinder in the action is *desirable*" in the interests of just adjudication. Fed. R. Civ. P. 19 advisory committee's note (1966) (emphasis added).

If the absentees are "necessary," the court determines whether it is feasible to order joinder. Joinder is not feasible when the potential party is not subject to personal jurisdiction, when joinder would destroy subject matter jurisdiction, and where venue is improper. *See EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005).

If the court determines that joinder is not feasible, it determines whether the parties are "indispensable" under Rule 19(b), such that the action must be dismissed in the parties' absence. *Id.* As Rule 19(b) suggests, this inquiry involves balancing the interests of the plaintiff, the defendant, the absentee party, the courts, and the public. *Feriozzi Co., Inc. v. Ashworks, Inc.*, 130 F. App'x 535, 538 (3d Cir. 2005) (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109–11 (1968)). "The considerations set forth in subdivision (b) are nonexclusive . . . . [t]he general direction is whether 'in equity and good consience, the action should proceed among the existing or should be dismissed.'" *Pimentel*, 553 U.S. at 862 (citing Fed. R. Civ. P. 19(b)).

On a motion to dismiss for failure to join a required party, "[t]he moving party has the burden of persuasion in arguing for dismissal." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). But if it appears that an absentee party is required to be joined under Rule 19, the burden shifts to the party opposing joinder to negate that conclusion. *See*

25

*United States v. Sweeny*, 418 F. Supp. 2d 492, 499 (citing 7 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1609 (3d ed. 2001)).

### 1. Rule 19(a)

Under Rule 19(a), "the joinder of parties is compulsory or 'necessary' if their joinder is 'feasible.' *Id.* Subsection (1) of Rule 19(a) provides that:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

#### (a) Rule 19(a)(1)(A)

Under subsection (a)(1)(A), the court only considers whether complete relief can be accorded to the parties already named. *See Gen. Refractories Co.*, 500 F.3d at 313. Here, complete relief can be accorded to Mr. Thorpe in the absence of the tribe or other lineal descendants. Assuming his father's remains are returned to him, his relief will be complete.

#### (b) Rule 19(a)(1)(B)

In contrast, subsection (a)(1)(B) involves considering the effect resolving the dispute may have on *unnamed* absentees. *Id.* at 316. The subsection has two disjunctive prongs; if an unnamed person meets *either* of these two prongs, he is a party which must be joined if feasible. *See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 405 (3d Cir. 1993) ("Clauses (1) and (2) of Rule 19(a) are phrased in the disjunctive and should be so treated . . . . any party whose absence results in any of the porblems identified . . . is a

party whose joinder is compulsory if feasible.") (internal citations omitted).   Under the first prong, the court must decide whether granting relief in the person's absence might "impair or impede" the person's ability to protect his or her claim to an interest in the litigation's subject matter.   Whether a party is necessary "is predicated only on that party having a *claim* to an interest . . . [j]ust adjudication of claims requires that courts protect a party's right to be heard and to participate in adjudication of a claimed interest, even if the dispute is ultimately resolved to the detriment of that party." *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992).

Both the tribe and Jim Thorpe's lineal descendants are necessary parties.  Any lineal descendant or tribe may request repatriation; thus they have a *claim* for repatriation sufficient to implicate Rule 19(a)(1)(B)(i).   *See* 25 U.S.C. § 3005(a)(1) ("[T]he Federal agency or museum, upon the request of a known lineal descendant of the Native American or of the tribe or organization . . . shall expeditiously return such remains and associated funerary objects.").   If the defendants are ordered to repatriate Jim Thorpe's remains to the plaintiff, the tribe and other lineal descendants will be unable to protect their interests in the subject matter of the litigation.

Because the first prong of Rule 19(a)(2)(B) is met, the second, alternative basis for finding an unnamed party necessary need not be considered.  Because the defendants have shown that absentee parties are required to be joined if feasible, the burden shifts to the plaintiff to negate that conclusion and show that joinder is not feasible, and that the action can continue in "equity and good conscience." *See* 7 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1609 (3d ed. 2001).

**2. Plaintiff Fails to Show that Joinder is Not Feasible and that the Absentees are Not Indispensable Under Rule 19(b)**

Determining feasibility is a two-step process.  First, a court must determine whether an absentee should be a plaintiff or defendant.  Second, the court determines whether joinder is feasible.

Here, the legal interests of the absentees are adverse to those of the plaintiff.[4] Therefore, if joined they would be designated as defendants.  *See Am. Motorists Ins. Co. v. Trane Co.*, 657 F.2d 146, 149 (7th Cir. 1981) ("The propriety of alignment is a matter not to be determined by mechanical rules, but by pragmatic review of the principal purpose of the action and the controlling matter in dispute.").

Joinder here may prove unfeasible, however.  It may be that these parties are not subject to the personal jurisdiction of the court, either because of tribal sovereign immunity or considerations of due process.  If joinder is not feasible, the court determines whether "in equity and good conscience," the action should nonetheless proceed.

Here, the plaintiff has not discussed whether joinder is feasible or whether the absentees are indispensable. The plaintiff carries the burden of demonstrating that joinder is not feasible and that the action should proceed under Rule 19(b). *See* 7 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1609 (3d ed. 2001) ("[W]hen an initial appraisal of the facts reveals the possibility that an unjoined party whose joinder is required under Rule 19 exists, the burden devolves on the party whose interests are adverse to the unjoined party to negate this conclusion and a failure to meet that burden will result in the

---

[4] These interests are *legally* adverse, even though the plaintiff asserts in his brief that the tribe and other lineal descendants support his claim.

28

joinder of the party or the dismissal of the action.").  Here, the plaintiff has failed to meet his

burden.

However, "a court does not know whether a particular person is 'indispensable' until

it has examined the situation to determine whether it can proceed without him." *Provident*

*Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 119 (1968). Here, the factors set

forth in Rule 19(b) cannot be examined, because nothing regarding the feasibility of joinder—

or whether the case can proceed without the required parties—has been presented to the

court.  It remains unknown whether joining the absentee tribe and lineal descendants is not

feasible, or whether the case could continue in their absence.   All the surrounding

circumstances must be examined before a determination of indispensability can be made.

Thus, the joinder of the absentee parties will be ordered.  If it turns out that the

absentees cannot be joined for lack of personal jurisdiction or otherwise, the Court will

consider evidence[5] and argument, properly submitted by the plaintiff, and determine whether

the action may proceed under Rule 19(b).  "The rule is that if the merits of the cause may

be determined without prejudice to the rights of necessary parties, absent and beyond the

jurisdiction of the court, it will be done; and a court of equity will *strain hard* to reach that

result." *Bourdieu v. Pac. W. Oil Co.*, 299 U.S. 65, 70–71 (1936) (emphasis added).

### III. Conclusion

The complaint states a claim upon which relief can be granted under the NAGPRA.

To the extent that the complaint seeks redress under 42 U.S.C. § 1983, or seeks

compensatory damages or attorney's fees, it will be dismissed and the plaintiff's claim will

---

[5] For example, evidence suggesting a lack of prejudice to the absentees could include affidavits from the absentees showing that they do not wish to assert their rights to repatriation.

29

be construed to proceed solely under the NAGPRA. The plaintiff will be directed to do one of the following: (1) join as defendants in an amended complaint the Sac & Fox tribe and all known lineal descendants of Jim Thorpe; or (2) submit evidence and briefing showing that joinder is not feasible, and that the action can proceed under the equitable considerations discussed in Rule 19(b).

February 4, 2011                         /s/ A. Richard Caputo
Date                                      A. Richard Caputo
                                          United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JOHN THORPE,

    Plaintiff,

      v.

BOROUGH OF JIM THORPE, et al.,

    Defendants.

NO. 3:10-CV-1317

(JUDGE CAPUTO)

## ORDER

**NOW**, this 4th day of February, 2011, **IT IS HEREBY ORDERED** that the defendants' motion to dismiss (Doc. 14) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**(1)** To the extent that the complaint seeks relief through 42 U.S.C. § 1983, it is dismissed, and the plaintiff's claim will proceed solely under the NAGPRA.

**(2)** To the extent that the complaint seeks attorney's fees and compensatory damages, it is dismissed.

**(3)** The plaintiff is ordered to do one of the following within twenty-one days of the date of this order: (1) join as defendants in an amended complaint all necessary parties, in accordance with the Court's opinion; *or* (2) submit evidence and briefing showing that joinder of any or all of the necessary parties is not feasible, and that action can proceed in "equity and good conscience" under Rule 19(b).

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge

31